# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: December 11, 2015

Ms. Megan K. Cavanagh
Garan Lucow Miller
1155 Brewery Park Boulevard
Suite 200
Detroit, MI 48207

Mr. Lincoln Glen Herweyer
Law Office
35054 Twenty Three Mile Road
Suite 115
New Baltimore, MI 48047

Re: Case No. 14-2449, *Carmen Amis v. James Twardesky, et al*
Originating Case No. : 2:13-cv-10560

Dear Counsel,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Laura A. Jones
Case Manager
Direct Dial No. 513-564-7023

cc: Mr. Fred L. Gibson
 Mr. John J. Gillooly
 Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0814n.06

No. 14-2449

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 11, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CARMEN AMIS, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) |
| | ) ON APPEAL FROM THE |
| JAMES TWARDESKY; BRADLEY ADKINS; | ) UNITED STATES DISTRICT |
| WILLIAM BECHILL; BRENT CHISOLM; | ) COURT FOR THE EASTERN |
| MICHAEL LEWIS, JR.; COLIN MCCABE; | ) DISTRICT OF MICHIGAN |
| ROBERT EIDT, | ) |
| Defendants-Appellees. | ) |

**BEFORE:** SILER, CLAY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Carmen Amis challenges the district court's grant of summary judgment to Warren police officers on her 42 U.S.C. § 1983 claim of unlawful arrest. Amis argues that the district court erred in holding that qualified immunity shielded Officers James Twardesky (Twardesky), Bradley Adkins, William Bechill (Bechill), Brent Chisolm (Chisolm), Michael Lewis, Jr. (Lewis), Colin McCabe (McCabe), and Robert Eidt. For the reasons stated below, we affirm.

**I.**

**A.**

On November 7, 2011, there was an altercation at Ivy Risdon's (Risdon) home on Ira Street in Warren, Michigan involving multiple people. During the fray, Angela Bentley (Angela)

Case 2:13-cv-10560-AC-MKM ECF No. 33 PageID.816 Filed 12/11/15 Page 3 of 11
Case: 14-2449 Document: 34 Filed: 12/11/2015 Page: 3 (3 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

stabbed Risdon's boyfriend Jonathan Ciccotelli (Ciccotelli) in the back with a knife. Ciccotelli was the ex-boyfriend of Brooke Amis (Brooke), Angela's cousin and the daughter of plaintiff Carmen Amis (Amis). Angela lived with Brooke and Amis, her aunt, at this time.

When McCabe and Lewis responded to the incident at Ira Street, Ciccotelli told them Angela had stabbed him in the back. Ciccotelli also told them that Angela lived at 23544 Cunningham Street, Amis' address. McCabe and Lewis then went to Amis' house, where some officers were already present, including Chisolm.

When Chisolm arrived, he, along with at least one other officer, walked to the front door and knocked on it. After a minute or two, Amis came to the door, stepped out onto the porch, and shut the door behind her. According to Chisolm, he told Amis the officers "were investigating a very serious crime and that Angela Bentley was being sought."

Amis said Angela was not there and that she was likely in Dearborn with a friend or with her mother. At some point, Amis went back into the house to check if Angela was inside, possibly at Chisolm's request. Amis did not allow the officers to look inside the house. Later, at the officers' request, Amis went back into the house again to see whether Angela was there. She said again that Angela was not there.

At some point, while talking with Amis on the front porch, Chisolm, Twardesky, and possibly others observed Angela through the front living room window of the house. According to Angela, Amis had no idea Angela was in the house because she was hiding in the basement. Amis went inside the house and returned with Angela, whom Chisolm arrested.

Case 2:13-cv-10560-AC-MKM ECF No. 33 PageID.817 Filed 12/11/15 Page 4 of 11
Case: 14-2449 Document: 34-2 Filed: 12/11/2015 Page: 4 (4 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

Twardesky arrested Amis for harboring a fugitive, though whether Amis was arrested before or after Angela is unclear.[1] After her arrest for harboring a fugitive, Amis was eventually charged with resisting and obstructing a police officer. On January 12, 2012, the obstruction charge was dismissed, and Twardesky re-arrested Amis for accessory after the fact. The state court judge dismissed the accessory after the fact charge for lack of probable cause.

**B.**

On February 11, 2013, Amis filed a complaint against multiple Warren police officers that asserted claims under 42 U.S.C. § 1983 for unlawful arrest, unlawful entry, and malicious prosecution. Following the officers' motion for summary judgment, the district court ruled that summary judgment was inappropriate on Amis' unlawful entry claim but proper on the unlawful arrest and malicious prosecution claims on the basis of qualified immunity. Amis appealed the district court's grant of summary judgment to the officers on her unlawful arrest claim.

**II.**

**A.**

We review *de novo* a district court's grant of summary judgment. *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998)). A court properly grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a grant of summary judgment, the appellate court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] Amis testified at her deposition that she was arrested after bringing Angela outside, and McCabe and Twardesky also testified that Angela was arrested before Amis. Bechhill, however, testified that he is unsure whether Amis's arrest occurred before or after Angela came onto the porch.

Case 2:13-cv-10560-AC-MKM ECF No. 33 PageID.818 Filed 12/11/15 Page 5 of 11
Case: 14-2449     Document: 34-2     Filed: 12/11/2015     Page: 4     (5 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

**B.**

Under section 1983, a plaintiff may bring "a cause of action against any person who, under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution and federal law." 42 U.S.C. § 1983; *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996). Section 1983 claims are subject to the affirmative defense of qualified immunity, which protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to prove that the government official is not entitled to qualified immunity. *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006)). Thus, the government official "is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Here, Amis' section 1983 claim alleges false arrest in violation of her Fourth Amendment rights. To show that an arrest violated a constitutional right, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 306 (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). The officer can lawfully arrest the plaintiff so long as there is probable cause to arrest her for some crime, even if the crime for which there is probable cause is

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

different from the stated crime of arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.") An officer "is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (citations omitted). "[E]ven if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011).

Here, the officers have alleged three crimes they had probable cause to believe Amis committed: accessory after the fact, harboring a fugitive, and resisting and obstructing an officer. "[S]tate law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." *Id.* at 215. We find that Twardesky could reasonably have believed he had probable cause to arrest Amis for resisting and obstructing an officer, as well as for accessory after the fact.

The Michigan offense of obstructing an officer provides for criminal liability for a person "who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties." Mich. Comp. Laws § 750.81d(1). As used in this provision, "'[o]bstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." *Id.* at § 750.81d(7)(a). To obstruct an officer under section 750.81d, it suffices to "know about an officer's lawful order and fail to obey it." *United States v. Mosley*, 575 F.3d 603, 607 (6th Cir.

- 5 -

Case 2:13-cv-10560-AC-MKM ECF No. 33 PageID.820 Filed 12/11/15 Page 7 of 11
Case: 14-2449 Document: 34 Filed: 12/11/2015 Page: 8 (7 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

2009). Physical interference with an officer is not required. *Id.* (suggesting that "refusing to produce information" or "ignoring an officer's command not to cross the street" would qualify as violations).

Amis argues that there was no probable cause to arrest her for obstruction because she did not restrict or obstruct the officers by standing on her porch and refusing to consent to a search. The officers argue that Twardesky reasonably could have believed Amis was failing to comply with his lawful command by refusing to bring Angela outside. The district court did not make a probable cause determination on this charge.

Even when viewing the evidence in the light most favorable to Amis, we conclude that an officer could reasonably believe he had probable cause to arrest her. The victim of the stabbing told the officers that Angela lived at Amis' house. When they arrived and asked Amis whether Angela was there, Amis said she was not there. Amis also twice went into the house and returned without producing Angela. The officers then saw Angela through the front window of the house. They did not know whether Amis was following their instructions, but they reasonably could conclude that she had been hiding Angela and lying to them. These circumstances are enough to make reasonable Twardesky's belief that he had probable cause to arrest Amis because she refused to comply with the officers' order to bring Angela outside.

Twardesky also could have reasonably believed he had probable cause to arrest Amis for being an accessory after the fact. Michigan law defines an accessory after the fact broadly as "one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment." *People v. Perry*, 594 N.W.2d 477, 481 (Mich. 1999) (quoting Rollin M. Perkins, Perkins on Criminal Law 667 (2d ed. 1969)). A person is guilty of being an accessory after the fact if she intends to hinder arrest and acts upon that intent. *Evans v.*

Case 2:13-cv-10560-AC-MKM ECF No. 33 PageID.821 Filed 12/11/15 Page 8 of 11
Case: 14-2449 Document: 34-2 Filed: 12/11/2015 Page: 9 (8 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

*City of Etowah, Tenn.*, 312 F. App'x 767, 770 (6th Cir. 2009). Amis argues that no reasonable officer could have believed that she knew about Angela's stabbing of Ciccotelli or intended to help her because the only evidence of her intent and knowledge was based on the fact that she would not allow defendants into her home and told them Angela was not there. Defendants argue that even if Amis' denial of Angela's presence did not establish probable cause, they had probable cause once they observed a female matching Angela's description through the window of Amis' home.

We found probable cause lacking and affirmed the district court's denial of the defendant officers' motion for summary judgment based on qualified immunity in *Evans v. City of Etowah, Tenn*. In *Evans*, Evans' son, Brandon Noble, was arrested on drug charges. 312 F. App'x at 768. Evans secured a bail bond which allowed for Noble to live with her. *Id.* After Noble failed to appear for a court proceeding, a bench warrant was issued for his arrest. *Id.* When the defendant officers met with the bail bondsman, they received the warrant for Noble's arrest and learned that Evans had previously lied about Noble's whereabouts. *Id.* at 770. The defendant officers then went to Evans' home to arrest Noble. *Id.* at 768. The facts occurring after the defendant officers arrived at Evans' home are as follows: "(1) there was a delay in answering the door, (2) Evans cooperated with the police as soon as she knew they were looking for Noble, (3) Evans called out to Noble and told him to come forward, and (4) Noble immediately emerged from a dark room into the common area." *Id.* at 770. Evans was charged as an accessory after the fact. *Id.* at 769. She later filed a § 1983 suit against the defendant officers for false arrest, claiming the arrest was without probable cause. *Id.* at 768.

In affirming the district court's denial of the motion for summary judgment based on qualified immunity, we found that Evans' actions did not "constitute evidence sufficient for a

Case 2:13-cv-10560-AC-MKM ECF No. 33 PageID.822 Filed 12/11/15 Page 9 of 11
Case: 14-2449 Document: 34 Page: 9 Filed: 12/17/2015 (9 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

'prudent officer' to believe that [she] both intended to hinder the arrest of Noble and acted upon that intent." *Id.* at 770 (citing *Logsdon v. Hains*, 492 F.3d 334. 342 (6th Cir. 2007)). We determined that under those facts, the defendant officers lacked evidence to create probable cause for Evans' arrest. *Id.* Because "the jury could find that [the defendant officers] lacked sufficient indications that Evans acted with felonious intent to warrant a prudent officer's finding of probable cause," Evans sufficiently alleged a constitutional violation to withstand summary judgment. *Id.* at 770-71.

On the other hand, we found probable cause and reversed the district court's denial of summary judgment to the defendant officers based on qualified immunity in *Smith v. Patterson*, 430 F. App'x 438 (6th Cir. 2011). In *Smith*, Wendy Meinke died in a gang shooting at an apartment complex in Taylor, Michigan. *Id.* at 439. Right after the shooting, Joshua Meinke, Wendy's son, climbed into an SUV with two friends who had just arrived and tried to run over the gang members. *Id.* One of Joshua's friends identified the shooter as wearing a white t-shirt and white basketball shorts. *Id.* Meanwhile, Franklin Smith and his passengers, one of whom was Devin Plummer, drove to the apartment complex to see friends. *Id.* Smith and his passengers drove past one of the defendant officers, and one of Joshua's friends pointed at Plummer, who was sitting in the front passenger seat, and said he was involved in the shooting. *Id.* The defendant officer stopped the car, arrested all four occupants, and brought them to the police station for questioning. *Id.* The prosecutor charged Plummer with murder and Smith as an accessory after the fact for driving the alleged getaway car. *Id.* at 440. Two weeks later, the results from a gunshot residue test came back inconclusive, and the charges were dropped. *Id.* Smith then filed a § 1983 suit against the defendant officers for false arrest, claiming the arrest was without probable cause. *Id.*

Case 2:13-cv-10560-AC-MKM ECF No. 33, PageID.823 Filed 12/11/15 Page 10 of 11
Case: 14-2449 Document: 34-2 Filed: 12/11/2015 Page: 9 (10 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

In finding that the defendant officer had probable cause to arrest Smith, we reasoned that he "at worst made a reasonable mistake about the existence of probable cause." *Id.* at 440. We noted that the defendant officer had just learned that a gang member had shot and killed a woman, and when an eyewitness identified Plummer as one of the participants, he reasonably stopped the car. *Id.* at 440-41. The defendant officer could "reasonably believe that this information was sufficient to warrant a prudent man in believing that [the four occupants] had committed or [were] committing an offense." *Id.* at 441 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (internal quotation mark omitted). And, "[m]ere minutes separated the shooting and the stop, suggesting that, if Plummer fired shots, Collins and Pannell knew about it, and making it unlikely that they had not just happened to get into the car with him right after the shooting." *Id.* Therefore, because the defendant officer reasonably made the arrest, he was afforded qualified immunity.

This case falls somewhere in between *Evans* and *Smith*. But we ultimately find that this case falls closer in that spectrum to the *Smith* situation. Viewing the facts in the light most favorable to Amis, Angela entered Amis' house through an unlocked back door at around 2:30 a.m. and hid in the basement. When defendants arrived at Amis' home, they were met by Amis who told them that Angela was probably in Dearborn with a friend or with her mother. Amis appeared sleepy. At defendants' request, Amis twice went back inside the house to see if Angela was inside. At this point, based on the court's ruling in *Evans*, defendants did not have probable cause to arrest Amis as an accessory after the fact. However, when defendants observed through the window a female matching Angela's description—after Amis had twice been in the house and said that Angela was not there—an officer in defendants' shoes reasonably could have believed that probable cause existed to suspect that Amis knowingly attempted to hinder police

Case 2:13-cv-10560-AC-MKM ECF No. 33 PageID.824 Filed 12/11/15 Page 11 of 11
Case: 14-2449 Document: 34-2 Filed: 12/11/2015 Page: 10 (11 of 11)

No. 14-2449
*Carmen Amis v. James Twardesky et al.*

attempts to apprehend Angela. The "practical, nontechnical" probable cause standard "does not demand" certainty or even that the inference be "more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). It asks only for "reasonable caution," *id.*, and that standard was met once defendants saw Angela through Amis' window.

Perhaps a reasonable jury could find that the information known to defendants when they arrested Amis fell short of probable cause. But that would require this court to find that no reasonable officer in those circumstances could have believed that Amis intended to hinder the arrest of Angela and acted upon that intent, or refused to comply with the officers' lawful order. Amis was not merely seen with Angela—Angela was seen hiding inside Amis' home after Amis had twice come outside and told defendants that Angela was not inside. These circumstances remove the case from the clearly established rule and preserve defendants' qualified immunity. The probable cause standard does not require defendants to prove Amis' guilt beyond a reasonable doubt. It requires only that the evidence be sufficient to warrant a "prudent officer" in believing that Amis was acting as an accessory or refusing to comply with an order. *Smith*, 430 F. App'x at 441. And here the evidence did just that.

### III.

We affirm the judgment of the district court that the officers are entitled to qualified immunity on Amis's unlawful arrest claim.

- 10 -